BYRON J. MCLAIN, CA Bar No. 257191
    bmclain@foley.com
SAVANNAH LEVIN, CA Bar No. 347929
    slevin@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

DAVID J. JORDAN, UTAH Bar No. 1751 (*pro hac vice forthcoming*)
    djordan@foley.com
JORDAN C. BLEDSOE, UTAH Bar No. 15545 (*pro hac vice forthcoming*)
    jordan.bledsoe@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES
TELEPHONE:  801.401.8900
FACSIMILE:   213.486.0065

Attorneys for Defendants BRUCE WILLIAMS,
ROBIN WILLIAMS, STEVE MORICI, and
JACQUELINE BROWN-MORICI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DARLEEN DIAZ, an individual; BERNICE PEREZ, an individual; DESIREE PEREZ, an individual; JANE ROE 8, an individual; and, ASHLEY RUIZ, an individual,

                                        Plaintiffs,

vs.

INTERNATIONAL CHURCHES OF CHRIST, INC., an unincorporated association and former California nonprofit corporation; THOMAS ("KIP") McKEAN, an Individual; ROB KOSBERG, an individual; CONNIE KOSBERG, an individual; STEVE GANSERT-MORICI, an individual; JACQUELINE GANSERT-MORICI, an individual; DAVID SARACINO, an individual; CHRIS DEL ROSARIO, an individual; BRUCE WILLIAMS, an individual; ROBIN WILLIAMS, an individual; ALFREDO ALANIS, an individual; and DOES 1 through 100, inclusive,

                                        Defendants.

Case No. 2:22-cv-09467-ODW-PLA

**DEFENDANTS STEVE GANSERT-MORICI, JACQUELINE BROWN-MORICI, BRUCE WILLIAMS, AND ROBIN WILLIAMS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Hearing Date:  August 21, 2023
Time:              2:30 p.m.
Place:             Courtroom 5D

Judge: Hon. Otis D. Wright, II

Complaint Filed: December 30, 2022

Responses Due: June 30, 2023

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2023, or as soon thereafter as this matter may be heard in the above-captioned Court, located at 350 West First Street, Courtroom 5D, Los Angeles, California 90012, Defendants Bruce Williams, Robin Williams, Steve Gansert-Morici, and Jaqueline Brown-Morici (collectively, the "Ministers") hereby move this Court for an order dismissing Plaintiffs Darleen Diaz, Bernice Perez, Desiree Perez, Jane Roe 8, and Ashley Ruiz's First Amended Complaint ("Amended Complaint") with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' allegations fail to meet the legal standard of pleadings at this stage of the proceeding and are barred by the statute of limitations. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this action, and such additional authority and argument as may be presented at the hearing on this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 23, 2023.

DATED: June 30, 2023

**FOLEY & LARDNER LLP**
Byron J. McLain
David J. Jordan
Jordan C. Bledsoe
Savannah L. Levin

*/s/ Byron J. McLain*
Byron J. McLain
Attorneys for Defendants Bruce Williams,
Robin Williams, Steve Morici, and Jacqueline
Brown-Morici

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 9

I.    INTRODUCTION .......................................................................................... 9

II.   RELEVANT ALLEGATIONS FROM COMPLAINT ....................................... 12

III.  LEGAL STANDARD .................................................................................... 14

IV.   ARGUMENT ................................................................................................ 14

      A.    THE SARACINO PLAINTIFFS' RICO CLAIMS FAIL (CLAIM 12).... 14

            1.    The Saracino Plaintiffs Lack Standing to Assert a RICO Claim .................................................................................. 14

            2.    The Saracino Plaintiffs Fail to Allege Racketeering by the Ministers ........................................................................ 16

            3.    The Saracino Plaintiffs' RICO Claims Are Time-Barred ............. 17

      B.    CANRA DOES NOT PROVIDE A CIVIL REMEDY (CLAIM 10) ....... 18

      C.    THE SARACINO PLAINTIFFS FAIL TO STATE A CLAIM FOR SEXUAL ASSAULT OF A MINOR (CLAIM 1) ..................................... 19

      D.    THE GENDER VIOLENCE STATUTE IS INAPPLICABLE (CLAIM 7) ...................................................................................... 21

      E.    THE SARACINO PLAINTIFFS' CLAIMS FOR ANNOYING OR MOLESTING A CHILD (CLAIM 2), LEWD AND LASCIVIOUS ACTS AGAINST A CHILD (CLAIM 3), SEXUAL BATTERY (CLAIM 6), AND GENDER VIOLENCE (CLAIM 7) FAIL TO STATE A CLAIM .......................................................................... 21

      F.    THE SARACIO PLAINTIFFS' CLAIM FOR NEGLIGENT SUPERVISION, HIRING, AND RETENTION FAILS (CLAIM 8) ........ 23

            1.    The Saracino Plaintiffs Fail to Allege Facts Supporting Their Claim ..................................................................... 23

            2.    The Statute of Limitations Bars the Saracino Plaintiffs' Claim ......................................................................... 26

      G.    THE SARACINO PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT SUPERVISION OF A MINOR (CLAIM 9) ..................... 27

      H.    THE SARACINO PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM AND THE CLAIM IS TIME-BARRED (CLAIM 11) ............... 27

            1.    The Saracino Plaintiffs Fail to Show Ministers Breached a Duty to Report ............................................................... 28

2.     The Saracino Plaintiffs Fail to State a Failure to Warn Claim .......................................................................................29

3.     The two-Year Statute of Limitations Bars the Saracino Plaintiffs' Claims.............................................................................31

V.    CONCLUSION.................................................................................32

# TABLE OF AUTHORITIES

**CASES**

*Aetna Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*
  264 P.2d 5 (Cal. 1953) .........................................................................................26

*Alma W. v. Oakland Unified Sch. Dist.*
  123 Cal. App. 3d 133 (1981) ..............................................................................20

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)..............................................................................................14

*Berg v. First State Ins. Co.*
  915 F.2d 4960 (9th Cir. 1990) .............................................................................15

*Bonilla v. City of Covina*
  No. CV 19-4314 PSG (JCX), 2019 WL 8013104 (C.D. Cal. Aug. 22, 2019) .............25

*C.A. v. William S. Hart Union High Sch. Dist.*
  270 P.3d 699 (Cal. 2012) .....................................................................................24

*Canyon Cnty. v. Syngenta Seeds, Inc.*
  519 F.3d 969 (9th Cir. 2008) .................................................................10, 14, 16

*Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.*
  235 Cal. App. 4th 1214 (2015..............................................................................30

*Delfino v. Agilent Technologies, Inc.*
  145 Cal. App. 4th 790 (2006) ..............................................................................24

*Diaz v. Gates*
  420 F.3d 897 (9th Cir. 2005) ...............................................................................15

*Doe v. Pasadena Hosp. Ass'n, Ltd.*
  No. 218CV08710ODWMAAX, 2020 WL 1244357 (C.D. Cal. Mar. 16, 2020) .........21

*Farmers Ins. Grp. v. Cnty. of Santa Clara*
  906 P.2d 440 (Cal. 1995) .............................................................................19, 20

*Flemming v. Cnty. of Alameda*

   No. 14-CV-05542-TEH, 2015 WL 846713 (N.D. Cal. Feb. 25, 2015)......................24

*Hiossen, Inc. v. Kim*

   No. CV 16-01579-SJO (MRWx), 2016 WL 10987365 (C.D. Cal. Aug. 17, 2016).....22

*Holmes v. Sec. Investor Prot. Corp.*

   503 U.S. 258 (1992).............................................................14, 16

*In re First All. Mortg. Co.*

   471 F.3d 977 (9th Cir. 2006) ..................................................22

*Jamshid-Negad v. Kessler*

   15 Cal. App. 4th 1704 (1993) .................................................27

*Jeffrey E. v. Cent. Baptist Church*

   197 Cal.App.3d 718 (Ct. App. 1988)...........................................19

*Jennings v. Emry*

   910 F.2d 1434 (7th Cir. 1990) ................................................16

*Johnson v. Simone*

   No. 2:08-CV-01455-MCEEFB, 2008 WL 5572890 (E.D. Cal. Dec. 12, 2008) ..........14

*JT Legal Grp., APC v. Vega*

   No. 219CV10361ODWPLAX, 2020 WL 2843366 (C.D. Cal. Apr. 15, 2020) ...........22

*Keum v. Virgin Am. Inc.*

   781 F. Supp. 2d 944, 951 (N.D. Cal. 2011)....................................24

*Lyles v. City of Huntington Park*

   No. CV 16-3223-GW (KSX), 2016 WL 7479365 (C.D. Cal. July 7, 2016)............28

*Magnum v. Archdiocese of Philadelphia*

   253 F. App'x 224, 225 (3d Cir. 2007) ........................................15

*Marroquin v. Target Corp.*

   No. LACV1900341JAKSSX, 2019 WL 2005793 (C.D. Cal. May 7, 2019) ..............24

*Mary M. v. City of Los Angeles*

    814 P.2d 1341 (Cal. 1991) ...............................................................................19

*McNeil v. Home Budget Loans*

    No. 09-cv-7588-ODW (AJWx), 2010 WL 1999580 (C.D. Cal. May 13, 2010)..........22

*Mendoza v. City of Los Angeles*

    66 Cal. App 4th 1333 (1998) .............................................................................24

*Oren v. Dromy*

    No. CV 19-9033 PA (AGRX), 2019 WL 12383079 (C.D. Cal. Nov. 21, 2019) .........15

*Phillips v. TLC Plumbing, Inc.*

    172 Cal. App.4th 1133 (Cal. App. 2009)...........................................................24

*Quach v. Cross*

    No. CV0309627GAFRZX, 2004 WL 2860346 (C.D. Cal. June 10, 2004) ................16

*Roman Catholic Bishop of San Diego v. Superior Court*

    42 Cal. App. 4th 1556 (Cal App. 1996)............................................................30

*Satcher v. Shubert*

    129 F. App'x 371 (9th Cir. 2005) .....................................................................16

*Sedima, S.P.R.L. v. Imrex Corp.*

    473 U.S. 479 (1985)........................................................................................16

*Tarasoff v. Regents of Univ. of Cal.*

    17 Cal. 3d 425 (1976) .....................................................................................30

*Travelers Com., Ins. Co. v. Nadjat-Haeim*

    No. CV10-840 AHM (PJWX), 2011 WL 13213824 (C.D. Cal. June 16, 2011)..........27

*W. Air Charter, Inc. v. Sojitz Corp.*

    No. CV 18-7361-JGB (KSx), 2019 WL 4509304 (C.D. Cal. May 2, 2019)...............22

*W. Shield Investigations & Sec. Consultants v. Superior Ct.*

    82 Cal. App. 4th 935 (Cal. App. 2000)............................................................26

*Wise v. Superior Court*

222 Cal. App. 3d 1008 (1990) ...................................................................28

*Zelig v. County of Los Angeles*

27 Cal. 4th 1171 (2002) ...........................................................................30

**STATUTES**

18 U.S.C. § 1590 .......................................................................................16

18 U.S.C. § 1956(a)(2) .............................................................................16

18 U.S.C. § 1961(1) ..................................................................................16

18 U.S.C. § 1962 .........................................................................................9

18 U.S.C. § 1964(c) ..................................................................................14

18 U.S.C. § 2251(a) ..................................................................................17

18 U.S.C. § 2252 .......................................................................................16

18 U.S.C. § 2252n(a) ................................................................................17

18 U.S.C. § 2260 .......................................................................................17

Civil Code § 1708.5 ..............................................................................9, 22

Civil Code § 52.4 ..............................................................................9, 21, 22

Code of Civil Procedure § 335.1 ........................................................26, 32

Penal Code § 11165 ....................................................................................9

Penal Code § 11166(a)(1) .........................................................................28

Penal Code § 647.6(a)(1) .......................................................................9, 22

Penal Code § 11164 ............................................................................18, 19

Penal Code §§ 288(a), (b)(1), (b)(2) ......................................................9, 22

Rules of Court, Rule 12(b)(6) ................................................................2, 13

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Case No. 2:22-cv-09467-ODW-PLA

4877-8877-7837.3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Child abuse is despicable and troubling. Defendants Bruce Williams and Robin Williams (together, the "Williams") and Steve Gansert-Morici and Jaqueline Brown-Morici (together, the "Moricis") (collectively, the "Ministers") support all efforts to hold those responsible accountable. But accusations of child abuse and misconduct against those who are not responsible for the abuse is reputationally and financially damaging. Baseless claims, like those against the Ministers, should be dismissed.

In this case, Plaintiffs Darleen Diaz, Bernice Perez, Desiree Perez,[1] Jane Roe 8, and Ashley Ruiz (collectively, "Plaintiffs") allege that the Ministers, apparently due to their positions in the "East Region Los Angeles ICOC" (the "Church"), are liable for RICO violations and various tort claims under California law. Am. Compl. ¶19. But Plaintiffs do not come close to stating claims against the Ministers.

Plaintiffs Darleen Diaz, Bernice Perez, Ashley Ruiz, and Jane Roe 8 (the "Saracino Plaintiffs") allege David Saracino sexually abused them in the 1990s while minors. They do not allege the Ministers abused them, yet they claim the Ministers are liable for the sexual abuse. The only allegations involving the Ministers are that Saracino abused Jane Roe 8 when she was three years old; Jane Roe 8's mother allegedly told the Moricis of the abuse; the Moricis told her to wait to report the abuse until they received advice from the Williams; and the International Church of Christ, Inc.'s ("ICOC") general counsel and another Church leader concluded after investigation that Jane Roe 8 was not abused. Based on those allegations, the Saracino Plaintiffs allege the Ministers are liable for Jane Roe 8's abuse and Saracino's subsequent alleged abuse of Darleen Diaz, Bernice Perez, and Ashley Ruiz, although that alleged abuse was unknown to the Ministers, was unrelated to any Church function, was in Saracino's personal (not Church) capacity, and occurred at

---

[1] Desiree Perez alleges that Chris Del Rosario abused her as an adult. She does not allege that the Ministers had any knowledge of Del Rosario's abuse; that they supervised, hired, or oversaw Del Rosario; or that they had any involvement with Del Rosario in any sense. Simply put, Desiree Perez provides no factual basis for any claim against the Ministers. As such, this Motion addresses claims asserted by the Saracino Plaintiffs, as those are the only Plaintiffs who allege facts that involve the Ministers in any way.

Saracino's home, in his pool, or in his car.

Despite those limited allegations, the Saracino Plaintiffs assert a RICO claim and a host of state tort claims against the Ministers. Those claims fail for the following (and other) reasons. *First*, the RICO claim (Claim 12) fails for at least three reasons:

1.      The Saracino Plaintiffs do not have standing to assert a RICO claim because they allege only personal injuries—not injuries to their business or property. The Ninth Circuit recognizes that personal injuries do not confer RICO standing. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). The Saracino Plaintiffs cannot cure this defect with an amended pleading.

2.      The Saracino Plaintiffs' allegations about a RICO pattern of racketeering activity have no connection to these Ministers. The Saracino Plaintiffs allege "many repeated occurrences" of human trafficking, money laundering, and sexual exploitation of minors and transmission of visual depictions of minors engaged in sexually explicit conduct. Am. Compl. ¶ 236. Yet, the Saracino Plaintiffs fail to allege that the Ministers engaged in a single instance of those predicate acts, let alone a pattern.

3.      Even if the Saracino Plaintiffs could allege a pattern of racketeering (and they cannot) RICO's four-year statute of limitations bars this claim because the Saracino Plaintiffs fail to allege any facts showing a basis for tolling this claim against the Ministers.

*Second*, the Saracino Plaintiffs' claim for violation of the California Child Abuse and Neglect Act ("CANRA") (Claim 10) requires certain mandated reporters to report abuse, but it imposes only criminal penalties. It does not provide for a civil remedy. And clergy only became subject to CANRA on January 1, 1997. Jane Roe 8 alleges that the Ministers were informed of her alleged abuse in 1996, and Darleen Diaz, Bernice Perez, and Ashley Ruiz do not allege that the Ministers knew of their alleged abuse at any time.

*Third*, the Saracino Plaintiffs allege that the Ministers are jointly liable under a theory of respondeat superior for Saracino's sexual assaults of the Saracino Plaintiffs (Claim 1). But a theory of respondeat superior applies only to employers/principals, and it does not apply to claims for sexual misconduct toward a third party because that conduct

is outside the scope of an employee/agent's duties. The Saracino Plaintiffs do not allege that the Ministers were Saracino's principals, and the allegations against Saracino establish he was not acting within the scope of his duties when he committed the alleged assaults.

**Fourth**, the Saracino Plaintiffs claim that the Ministers are jointly liable for Saracino's gender violence against them (Claim 7); however, the gender violence statute was not enacted until years after the Saracino Plaintiffs were allegedly abused, and the statute does not apply retroactively.

**Fifth**, the Saracino Plaintiffs assert that the Ministers are jointly liable for Saracino's molestation (Claim 2), lascivious acts (Claim 3), sexual battery (Claim 6), and gender violence (Claim 7) because the Ministers allegedly conspired with him to commit the abuse and aided and abetted his abuse. There is not a single allegation, however, showing the Ministers agreed with Saracino to commit abuse or that they substantially assisted Saracino in committing the abuse. The joint liability claims are baseless and absurd.

**Sixth**, the Saracino Plaintiffs contend that the Ministers are liable for the abuse because they negligently supervised, hired, and retained Saracino (Claim 8). Again, the Saracino Plaintiffs fail to allege that the Ministers were responsible for hiring, supervising, or retaining Saracino. Nor do they allege any facts showing that the Ministers could have foreseen that Saracino would abuse Jane Roe 8 during her participation in a Church program. The other Saracino Plaintiffs were not abused while Saracino was acting in any capacity for the Church, as they were abused at Saracino's home, in his pool, or in his car. The Saracino Plaintiffs' claims are also time-barred.

**Seventh**, the Saracino Plaintiffs' cause of action for negligent supervision of a minor (Claim 9) is inapplicable because it applies only where a *minor* commits a tort and is not properly supervised. The Saracino Plaintiffs do not allege tortious conduct by a minor.

**Last**, the Saracino Plaintiffs' negligence claim (Claim 11) alleges failure to report and warn. The Ministers did not have a duty to report any abuse because they were allegedly told in 1996 of Jane Roe 8's allege abuse (before clergy were required in 1997 to start reporting alleged abuse). The Saracino Plaintiffs also do not allege the Ministers had

knowledge of the other alleged abuses. Jane Roe 8's reporting claim also fails for lack of causation because she was not abused after her mother told the Moricis of the abuse. As for the failure to warn, the Saracino Plaintiffs allege no facts showing the Ministers had reason to believe that Saracino would abuse Jane Roe 8, or that they had a legal duty under California law to warn the Church congregation of Saracino's alleged abuse (particularly after an investigation determined otherwise), and when the subsequent abuse happened outside of any Church involvement. Additionally, the Saracino Plaintiffs' negligence claims are time-barred. The Court should dismiss the claims with prejudice.

## II.   RELEVANT ALLEGATIONS FROM COMPLAINT

### Jane Roe 8's Allegations

Jane Roe 8 alleges that in 1996 Saracino molested her when she was three years old while he was volunteering as a Kids Kingdom worker at the Church. *Id.* at ¶ 152. After attending a church service, Jane Roe 8 went home and told her mother what happened, and her mother told the Moricis, who allegedly asked that the mother wait to report the abuse until the Moricis received advice from the Williams. *Id.* at ¶ 153–154. The next day, Jane Roe 8's mother received a call from John Bringardner, the ICOC's general counsel, who promised to investigate. *Id.* at ¶¶ 155–157. The Moricis told Jane Roe 8's mother that Bringardner asked Raul Dunn, the East Region Kids Kingdom leader, to investigate the incident. *Id.* ¶ 159. Dunn investigated the incident and concluded that Jane Roe 8 had not been abused. *Id.* ¶¶ 158–159. Days later, Jane Roe 8's mother attended a meeting with the Moricis, the Williams, Bringardner, and Kip McKean (the founder of the ICOC) to discuss the investigation. *Id.* at ¶ 165. Although Jane Roe 8 acknowledges the Ministers referred the matter for investigation, Jane Roe 8 faults the Ministers for failing to report the abuse, although Jane Roe 8 does not allege any sexual abuse thereafter. *Id.* ¶¶ 155–157.

Jane Roe 8 alleges no facts showing that her claim should be tolled or that she did not, or could not, discover her claims until recently. *See id.* Jane Roe 8 filed a complaint in another action (which was voluntarily dismissed) in which she admits that she "suffered in silence for more than two decades" and has been "in and out of therapy and/or counseling

her entire life" from the abuse. *See* Case No. 2:23-cv-01192, Compl. ¶ 140, Dkt. No. 1.

### Ashley Ruiz's Allegations

Ashley Ruiz alleges that Saracino sexually abused her in 1996, when she was around five years old. *Id*. at ¶ 173. She alleges that her mother allowed Saracino to pick her up from school and take her to his home, where he would show her pornographic materials and sexually assault her at his home and in his swimming pool. *Id.* ¶ 175. She further alleges that she told her mother of the abuse in 2004 and that, at that time, her mother filed a police report. *Id.* Ashley Ruiz does not allege that she, her mother, or anyone else informed the Ministers of her abuse. *See id.* ¶¶ 171–175.

### Bernice Perez's Allegations

Bernice Perez alleges that Saracino sexually abused her at his home and in the backseat of his car in 1998 and 1999, when she was seven and eight years old. *Id*. at ¶ 113. Bernice Perez told her mother, Desiree Perez, in 1999 that Saracino had abused her. *Id.* ¶ 127. Bernice Perez does not allege that she, her mother, or anyone else informed the Ministers of her abuse. *See id.* ¶¶ 110–114.

### Darleen Diaz's Allegations

Darleen Diaz alleges that Saracino abused her at his home, in his swimming pool, and in the backseat of his car from 1998 to 1999, when she was nine years old. *Id*. at ¶¶ 116, 119. Darleen Diaz alleges that, as a result of the abuse, she repressed her memory of the incident until around 2003. *Id*. at ¶ 118. When Darleen Diaz's mother, Desiree Perez, first asked Darleen Diaz about whether Saracino abused her, Darleen Diaz denied it. *Id.* at ¶ 122. In or around 2003, Darleen Diaz told her mother of the abuse. *Id.* at ¶ 123. Darleen Diaz does not allege that she, her mother, or anyone else informed the Ministers of her abuse. *See id.* ¶¶ 115–24.

### The Saracino Plaintiffs' Alleged Injuries

The Saracino Plaintiffs allege personal injuries resulting from Saracino's abuse, including "severe pain and suffering, emotional distress, humiliation, mental anguish, loss of enjoyment of life, loss of educational opportunity, loss of wages, loss of income, and

loss of future wages." *Id.* ¶¶ 114, 124, 139, 276, 284, 298.

## III.  **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts are not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678-79. Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## IV.  **ARGUMENT**

### A.    THE SARACINO PLAINTIFFS' RICO CLAIMS FAIL (CLAIM 12)

The Saracino Plaintiffs do not have standing to assert a RICO claim because they allege only personal injuries. Even if they could show standing, they fail to allege a pattern of racketeering by the Ministers, or that the Ministers were involved in a RICO enterprise. And even if they could show a patten of racketeering or a RICO enterprise, the statute of limitations bars their RICO claims.

#### 1.    The Saracino Plaintiffs Lack Standing to Assert a RICO Claim

RICO provides a private right of action for "[a]ny person injured in his business or property" by a RICO violation. 18 U.S.C. § 1964(c). RICO imposes a standing requirement. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Case law is settled that "[p]ersonal injury and financial loss incident to such injury do not demonstrate the proprietary type of injury sufficient to maintain a RICO claim." *Johnson v. Simone*, No. 2:08-CV-01455-MCEEFB, 2008 WL 5572890, at *2 (E.D. Cal. Dec. 12, 2008). "Indeed, the Ninth Circuit has specifically held that 'personal injury, including emotional distress, is not compensable under section 1964(c) of RICO." *Oren v.*

*Dromy*, No. CV 19-9033 PA (AGRX), 2019 WL 12383079, at *1 (C.D. Cal. Nov. 21, 2019) (quoting *Berg v. First State Ins. Co.*, 915 F.2d 4960, 464 (9th Cir. 1990)). Further, damages that are derivative of personal injuries, including loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are insufficient to confer RICO standing. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

For example, in *Magnum v. Archdiocese of Philadelphia*, twelve individuals brought RICO claims against the Archdiocese of Philadelphia and three of its Cardinals, alleging they "engaged in a large-scale cover-up of a pattern of child abuse perpetrated by individual priests." No. 06-CV-2589, 2006 WL 3359642, at *1 (E.D. Pa. Nov. 17, 2006). The plaintiffs asserted the alleged cover-up and abuse caused them to suffer (1) severe emotional distress, resulting in loss of earnings and decreased earning capacities; (2) out of pocket medical and psychological treatment expenses; and (3) loss of the ability to pursue time-barred claims. *Id.* at *3. The defendants moved to dismiss the RICO claims for lack of standing. *Id.* at *1. The Court granted the motion, ruling that those types of damages result from personal injuries and are not injuries to "business or property" under RICO. *Id.* at *3–*7. On appeal, the Third Circuit affirmed. *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 225 (3d Cir. 2007).

Like in *Magnum*, the Saracino Plaintiffs fail to allege any injury to "business or property" under RICO. They allege only personal injuries resulting from Saracino's abuse. *See* Am. Compl. ¶¶ 110–124, 152–175. And they allege that, as a result of that abuse, they have suffered severe pain and suffering, emotional distress, humiliation, mental anguish, loss of enjoyment of life, loss of educational opportunity, loss of wages, loss of income, and loss of future wages. Am. Compl. ¶¶ 114, 124, 139, 276, 284, 298. Those alleged damages are wholly derivative of their personal injuries from Saracino's abuse. Thus, the Saracino Plaintiffs lack standing to maintain a RICO claim against any defendant.

Even if the Saracino Plaintiffs could show harm to "business or property" under RICO, they cannot show that a RICO violation by the Ministers proximately caused their harm. To have standing, the RICO violation must not only be the "but for" cause but also

the proximate cause of the plaintiff's injury. *Magnum*, 2006 WL 3359642, at *3 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). As explained below, the Saracino Plaintiffs fail to allege that the Ministers engaged in a single predicate act (i.e., human trafficking, money laundering, sexual exploitation of a minor) or that those alleged predicate acts caused their harm. *See infra* Section IV.A.2. Thus, the RICO violations could not have proximately caused their harm. They lack standing for this additional reason.

### 2. The Saracino Plaintiffs Fail to Allege Racketeering by the Ministers

Once standing is established, to "state a valid RICO claim," a plaintiff must "allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Satcher v. Shubert*, 129 F. App'x 371, 372 (9th Cir. 2005) (quoting *Sedima, S.P.R.L. v. Imrex Corp.*, 473 U.S. 479 (1985)). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years" *Canyon Cnty.*, 519 F.3d at 972 (quoting 18 U.S.C. § 1961(5)). "'[I]n pleading predicate acts[,] conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations.'" *Quach v. Cross*, No. CV0309627GAFRZX, 2004 WL 2860346, at *6 (C.D. Cal. June 10, 2004) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990)).

The Saracino Plaintiffs allege the Ministers engaged in "repeated occurrences" of human trafficking under 18 U.S.C. § 1590, money laundering under 18 U.S.C. § 1956(a)(2), and sexual exploitation of minors and the transmission of visual depictions of minors engaged in sexually explicit conduct under 18 U.S.C. §§ 2251, 2252, and 2260." Am. Compl. ¶ 293. Those respective statutes apply only where a person engages in human trafficking or interferes with the enforcement of human trafficking, engages in a financial transaction that involves unlawful proceeds with the intent to carry on an unlawful activity, and is involved in the transmission of depictions of minors engaged in sexual activities. *See* 18 U.S.C. §§ 1590, 1956(a)(2), 2251, 2252, 2260.

Here, of course, there are *no* factual allegations that come close to alleging that the

Ministers were engaged in human trafficking or prevented the enforcement of trafficking; engaged in a financial transaction, much less an unlawful one with the intent to carry on an unlawful activity; or were involved in any way in the transmission of depictions of minors engaged in sexual activities. *See* Am. Compl. ¶¶ 110–175. The RICO claim fails for this additional reason.

Additionally, the Saracino Plaintiffs fail to allege facts showing an enterprise engaged in the alleged predicate acts because "there are no allegations regarding who did what over a continuing period of time to incur RICO liability." *Quach*, 2004 WL 2860346, at *8 ("Plaintiff's failure to allege how any Defendants functioned as a continuing unit with a common purpose amounts to another, related justification for dismissal of the FAC for failure to fulfill RICO's enterprise element, in addition to her failure to allege a structure for making the racketeering decisions.").

### 3. The Saracino Plaintiffs' RICO Claims Are Time-Barred

Even if the Saracino Plaintiffs had standing and could allege that the Ministers engaged in a pattern of racketeering, the statute of limitations bars their RICO claims. "The statute of limitations for RICO is four years." *Scott v. Boos*, 215 F.3d 940, 942 n.4 (9th Cir. 2000). "A RICO action accrues when a plaintiff knows or should know of the injury that underlies his cause of action," not when the pattern of racketeering is discovered. *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003) (ruling RICO claim was time-barred because plaintiff's claim accrued when he was allegedly arrested, convicted, and incarcerated for a crime he did not commit, not when he allegedly discovered the pattern of racketeering).

Here, the Saracino Plaintiffs admit that they knew Saracino abused them, but failed to assert a claim within four years of turning 18 years old. Specifically, the Amended Complaint alleges that Desiree Perez, mother of Bernice Perez and Darleen Diaz, asked her daughters in 1999 if Saracino abused them. Am. Compl. ¶ 122. In response, Bernice Perez told her mom that Saracino abused her. *Id.* Darleen Diaz initially denied the abuse, but then told her mother approximately three years later that Saracino abused her. *See id.* ¶¶ 116, 122. Bernice Perez turned 18 in 2009 and Darleen Diaz turned 18 in 2007. *See id.*

¶¶ 110, 115. Thus, Bernice Perez's claim expired in 2013 and Darleen Diaz's claims expired in 2011.

As for Jane Roe 8, she alleges that Saracino abused her in 1996 when she was three years old. *Id.* ¶ 152. Jane Roe 8's mother allegedly learned of the abuse at that time. *Id.* ¶ 154. Jane Roe 8 does not allege that she did not know of the abuse or could not have discovered the abuse until recently. *See id.* Rather, Jane Roe 8 admits in a complaint filed in another action (which she voluntarily dismissed) that she "suffered in silence for more than two decades" and "has been in and out of therapy and/or counseling her entire life" as a result of the abuse. *See* Case No. 2:23-cv-01192, ECF No. 1, Compl. ¶ 140, Dkt. No. 1. Jane Roe 8 turned 18 in 2011 and thus her claim expired in 2015. Am. Compl. ¶ 152.

Finally, Ashely Ruiz alleges Saracino abused her in 1996 when she was around five years old. *Id.* ¶¶ 171, 173, 175. She alleges that she told her mother of the abuse in 2004 and that, at that time, her mother filed a police report. *Id.* ¶ 173. Ashely Ruiz allegedly turned 18 in 2009. *Id.* ¶ 171. Thus, her claim expired in 2013. As a result, all the Saracino Plaintiffs' RICO claims are time-barred.

## B.    CANRA DOES NOT PROVIDE A CIVIL REMEDY (CLAIM 10)

The Saracino Plaintiffs contend that the Ministers are liable under CANRA for failing to report their alleged abuse. *See* Penal Code §§ 11164, *et seq.*; Am. Compl. ¶¶ 211–20. But CANRA does not provide a civil remedy under which Plaintiffs can obtain relief and, even if it did, the Ministers did not violate CANRA.

First, the Saracino Plaintiffs cannot state a claim under CANRA because it provides only criminal penalties. Neither Penal Code Section 11166 nor any other part of CANRA imposes civil liability, or provides a civil remedy, for a failure to make a report. *See generally* Penal Code §§ 11164–11174.3. Rather, a mandated reporter who fails to make a report is subject *only* to the criminal penalties set forth in Section 11166. Thus, the Saracino Plaintiffs cannot state a civil claim under CANRA.

Even if CANRA provided an avenue for civil relief, the Saracino Plaintiffs could not state a claim for failure to report because CANRA did not apply to clergy until 1997, and

that change does not apply retroactively. *See* CRIMES—CHILD ABUSE—REPORTS, 1996 Cal. Legis. Serv. Ch. 1081 (A.B. 3354) (indicating the amendment making clergy mandatory reporters of certain instances of child abuse would become effective January 1, 1997). Here, Jane Roe 8 alleges that her mother informed the Ministers that Saracino abused Jane Roe 8 in 1996, before the Ministers had any mandatory reporting obligations. As a result, Jane Roe 8's CANRA claim fails. Further, Darleen Diaz, Bernice Perez, and Ashley Ruiz do not allege that the Ministers had any knowledge of their alleged abuse. *See* Am. Compl. ¶¶ 110–151, 171–175. Thus, their CANRA claims also fail.

### C.   THE SARACINO PLAINTIFFS FAIL TO STATE A CLAIM FOR SEXUAL ASSAULT OF A MINOR (CLAIM 1)

The Saracino Plaintiffs allege the Ministers are vicariously liable for Saracino's sexual assault under a theory of respondeat superior because the Ministers allegedly knew or should have known that he was molesting children. Am. Compl. ¶ 184. The claim fails, however, because the Ministers were not Saracino's employer and respondeat superior liability does not apply where a person commits a tort outside the scope of employment.

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment" *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1343 (Cal. 1991). "The doctrine of respondeat superior applies to public and private employers alike." *Id.* at 1344. "For the doctrine of respondeat superior to apply, the plaintiff must prove that the employee's tortious conduct was within the scope of employment." *Id.* But "the law is clear that an employer is not strictly liable for all actions of its employees during working hours." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 906 P.2d 440, 449 (Cal. 1995). "Significantly, an employer will not be held vicariously liable for an employee's malicious conduct or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes." *Id.* "If the employee substantially deviates from the employment duties for personal purposes, the employer is not vicariously liable." *Jeffrey E. v. Cent. Baptist Church*, 197 Cal.App.3d 718, 721 (Ct. App. 1988).

An employer is not vicariously liable for an employee's sexual misconduct toward a third party because that conduct is not within the scope of the employee's employment.[2] *Farmers Ins. Grp.*, 906 P.2d at 450; *see, e.g.*, *Cent. Baptist Church*, 197 Cal.App.3d at 723 (ruling church was not liable for Sunday school teacher's repeated acts of sexual assault of minor because acts were not incidental to his duties); *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 140 (1981) (ruling school district not liable for janitor's abuse of minor student because "[s]exual molestation is in no way related to mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian").

For example, in *Rita M. v. Roman Cath. Archbishop*, a 16 year-old girl alleged she was sexually touched by a Roman Catholic priest "in the confessional booth and also in the home of a relative of the priest" and then seduced to have sexual intercourse with "parish priests after having been told by them that the acts were ethically and religiously permissible." 187 Cal. App. 3d 1453, 1457 (1986). The girl and her parents asserted claims against the Roman Catholic Archbishop of Los Angeles, alleging it was vicariously liable for the priests' sexual abuse of the minor girl. *Id.* at 690. The district court ruled that the Roman Catholic Archbishop of Los Angeles was not vicariously liable under a respondeat superior theory and dismissed that claim without leave to amend. *Id.* at 686–87. On appeal, the court of appeals affirmed, ruling that "[i]t would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop of the Roman Catholic Church. There is simply no basis for imputing liability for the alleged conduct of the individual defendant-priests in this instance to the respondent Archbishop." *Id.*

Here, like in *Rita*, the Saracino Plaintiffs' respondeat superior theory against the Ministers is defective. To begin, the Saracino Plaintiffs do not allege the Ministers were Saracino's employer. *See generally* Am. Compl. Next, even if the Saracino Plaintiffs could allege such a relationship, the Ministers are not vicariously liable for Saracino's alleged

---

[2] The limited exception to this rule is where there is "sexual misconduct by on-duty police offers against members of the public." *Cent. Baptist Church*, 197 Cal.App.3d at 723.

sexual assaults because it would defy every notion of logic and fairness to say that Saracino's sexual assaults were incidental to his duties for the Church or that sexual assault is a characteristic of the Church. Thus, the Saracino Plaintiffs' claims against the Ministers for sexual assault fail as a matter of law and should be dismissed with prejudice.

### D. THE GENDER VIOLENCE STATUTE IS INAPPLICABLE (CLAIM 7)

The Saracino Plaintiffs allege that the Ministers are liable for gender violence because they conspired and/or aided and abetted Saracino to sexually abuse them. Am. Compl. ¶ 239. That claim fails a matter of law because Section 52.4 was not enacted until years after Saracino allegedly abused them, and the statute does not apply retroactively.

California Civil Code § 52.4 became effective on January 1, 2003. *See* Cal. Civ. Code § 52.4. This Court has recognized that Section 52.4 does not apply retroactively because "the statute and legislative history is silent as to section 52.4's retroactivity" and thus "the Court does not find that section 52.4 was intended to apply retroactively . . . ." *Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 218CV08710ODWMAAX, 2020 WL 1244357, at *8 (C.D. Cal. Mar. 16, 2020) (Wright, O.) (dismissing gender violence claims with prejudice because "the statute did not exist during the time of Sutton's misconduct").

Here, the Saracino Plaintiffs all allege Saracino abused them in the 1990s as opposed to after January 1, 2003. Am. Compl. ¶¶ 113, 116, 152, 173. Thus, the Saracino Plaintiffs cannot state a claim for gender violence against the Ministers.

### E. THE SARACINO PLAINTIFFS' CLAIMS FOR ANNOYING OR MOLESTING A CHILD (CLAIM 2), LEWD AND LASCIVIOUS ACTS AGAINST A CHILD (CLAIM 3), SEXUAL BATTERY (CLAIM 6), AND GENDER VIOLENCE (CLAIM 7) FAIL TO STATE A CLAIM

The Saracino Plaintiffs allege that Saracino violated the following statutes by sexually abusing them: California Penal Code § 647.6(a)(1) (annoying or molesting a child); Penal Code §§ 288(a), (b)(1), (b)(2) (lewd and lascivious acts against a child); California Civil Code § 1708.5 (sexual battery); and California Civil Code § 52.4 (gender

violence). Am. Compl. ¶¶ 187–193, 194–200, 221–232, 233–242. The Saracino Plaintiffs allege that the Ministers are jointly liable for Saracino's violations of those statutes because they allegedly conspired with him to commit the sexual abuse or aided and abetted the abuse. *Id.* ¶¶ 186, 192, 226, 228, 239. But no allegations exist that show the Ministers conspired with Saracino to have him abuse the Saracino Plaintiffs or aided and abetted his heinous abuse.

"The elements for civil conspiracy are '(a) an agreement among the alleged conspirators to commit a tortious act (formation and operation of the conspiracy); (b) the tortious act(s) committed pursuant to the agreement; and (c) resulting damages to the Plaintiffs.'" *JT Legal Grp., APC v. Vega*, No. 219CV10361ODWPLAX, 2020 WL 2843366, at *3 (C.D. Cal. Apr. 15, 2020) (Wright, O.) (quoting *W. Air Charter, Inc. v. Sojitz Corp.*, No. CV 18-7361-JGB (KSx), 2019 WL 4509304, at *11 (C.D. Cal. May 2, 2019)). "Additionally, '[d]efendants must have actual knowledge a tort is planned, know of its unlawful purpose, concur in the scheme, and intend to aid in the tort's commission.'" *Id.* (quoting *McNeil v. Home Budget Loans*, No. 09-cv-7588-ODW (AJWx), 2010 WL 1999580 at *5 (C.D. Cal. May 13, 2010)).

Similarly, "[a] claim for aiding and abetting may be supported by allegations that the defendant acted in one of two ways." *JT Legal Grp., APC,* 2020 WL 2843366, at *3. "First, a plaintiff may allege that the defendant '(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance of encouragement to the other to so act.'" *Id.* (quoting *Hiossen, Inc. v. Kim*, No. CV 16-01579-SJO (MRWx), 2016 WL 10987365, at *17 (C.D. Cal. Aug. 17, 2016). "Alternatively, a plaintiff may allege that the defendant '(b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Id.* (quoting *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006)). "Moreover, aiding and abetting liability requires a finding of actual knowledge." *Id.*

Here, aside from conclusory statements, the Saracino Plaintiffs fail to allege any facts consistent with the elements of either theory. First, there are *no* factual allegations

that the Ministers had *actual* knowledge that Saracino sexually abused the Saracino Plaintiffs, which is a necessary element for both civil conspiracy and aiding and abetting claims. *See generally* Am. Compl. Second, there are *no* factual allegations that the Ministers agreed with Saracino to abuse the Saracino Plaintiffs, or had *any* communications with Saracino. *Id.* Third, there are *no* factual allegations that the Ministers substantially assisted Saracino in any manner in abusing the Saracino Plaintiffs. *Id.*

The only relevant factual allegations against the Ministers are that Jane Roe 8's mother allegedly told the Moricis that Saracino molested her daughter; that the Moricis allegedly told her not to report the abuse until they sought advice from the Williams; that the Moricis then turned the investigation of the incident over to the ICOC's general counsel and another church leader, who concluded that Jane Roe 8 had not been abused; and that Saracino abused Darleen Diaz and Bernice Perez several years later, after the Ministers were no longer leaders of the Church. Am. Compl. ¶¶ 129–130, 154–155, 159. Those allegations fail to show the Ministers had actual knowledge of the alleged abuse, had any agreement with Saracino, or assisted Saracino in any way to commit abuse. Thus, the Saracino Plaintiffs' claims for annoying or molesting a child (Claim 2), lewd and lascivious acts against a child (Claim 3), sexual battery (Claim 6), and gender violence (Claim 7) should be dismissed.

## F. THE SARACIO PLAINTIFFS' CLAIM FOR NEGLIGENT SUPERVISION, HIRING, AND RETENTION FAILS (CLAIM 8)

The Saracino Plaintiffs allege that the Ministers are liable for negligently supervising, hiring, and retaining Saracino. Am. Compl. ¶¶ 131, 248. *See generally* Am. Compl. This claim is inadequately pleaded and time–barred.

### 1. The Saracino Plaintiffs Fail to Allege Facts Supporting Their Claim

"Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee." *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 951 (N.D. Cal.

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
-23-
Case No. 2:22-cv-09467-ODW-PLA

2011). "There are two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury.'" *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App.4th 1133, 1142 (Cal. App. 2009)). As to the first element, "'[a]bsent a special relationship between the plaintiff and the defendant, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee.'" *Marroquin v. Target Corp.*, No. LACV1900341JAKSSX, 2019 WL 2005793, at *8 (C.D. Cal. May 7, 2019) (quoting *C.A. v. William S. Hart Union High Sch. Dist.*, 270 P.3d 699, 709 (Cal. 2012)). "Liability for negligent hiring and supervision is based upon the reasoning that if an *enterprise* hires individuals with characteristics which might pose a danger to customers or other employees, the *enterprise* should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal. App 4th 1333, 1339 (1998) (emphases added).

As to the second element, "the plaintiff must demonstrate that the employer 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" *Id.* (quoting *Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790, 815 (2006)) ("Knowledge of an employee's potential danger to others is an element of a negligent hiring claim and therefore must be alleged through more than conclusory statements."); *Flemming v. Cnty. of Alameda*, No. 14-CV-05542-TEH, 2015 WL 846713, at *8–*9 (N.D. Cal. Feb. 25, 2015) (finding that, "absent any factual allegation that [] Defendants knew of the employees' dangerous propensities **before hiring them**, Plaintiff fails to state a claim for negligent hiring") (emphasis in original).

Here, the Saracino Plaintiffs fail to satisfy either element. First, the Saracino Plaintiffs do not allege that the Ministers had an employment, principal-agent, or special relationship with Saracino. Rather, the Saracino Plaintiffs allege that Saracino was a volunteer for the Church's East Region Kids Kingdom program—not for the Ministers personally. Am. Compl. ¶ 153. Further, the Saracino Plaintiffs allege no facts showing that the Ministers were responsible for hiring, retaining, or supervising Saracino. *See generally*

*id.* The only Plaintiff who alleges abuse while Saracino was volunteering for the Kids Kingdom program is Jane Roe 8, and the Saracino Plaintiffs allege that Raul Dunn was "the East Region Kids Kingdom leader," not the Ministers. *Id.* ¶ 158. The other three Saracino Plaintiffs were abused at Saracino's home, in his swimming pool, or in his car, and the Saracino Plaintiffs do not allege Saracino abused them while he was acting in any capacity for the Church. Am. Compl. ¶¶ 113, 175. There cannot be a tort duty to supervise a Church member's personal conduct at his own home and outside his role with the Church. Thus, the Ministers are not liable for negligent hiring, supervision, or retention of Saracino. *See generally* Am. Compl. *See Bonilla v. City of Covina*, No. CV 19-4314 PSG (JCX), 2019 WL 8013104, at *2 (C.D. Cal. Aug. 22, 2019) ("[A] plaintiff must allege a 'special relationship' between supervisory personnel and the plaintiff to maintain a vicarious liability claim for negligent hiring, retention, or supervision of fellow employees.").

Second, even if the Saracino Plaintiffs could show a special relationship between Saracino and the Ministers (and they cannot), the Saracino Plaintiffs do not allege facts satisfying the foreseeability element of their claim. The Saracino Plaintiffs do not allege that Saracino abused anyone before he allegedly abused Jane Roe 8. *See generally id.* Nor do they allege any facts showing that the Ministers had any reason to know or suspect that Saracino would abuse Jane Roe 8. *Id.* Thus, Jane Roe 8's claim fails on this ground.

The other three Saracino Plaintiffs cannot satisfy this element because Saracino did not abuse them while acting in any role for the Church. Specifically, Ashley Ruiz alleges Saracino abused her in 1996 (there are no allegations about whether that abuse occurred before or after Jane Roe 8 was abused). *Id.* She alleges that her mother allowed Saracino to pick her up from school and take her to his home where he would sexually abuse her. *Id.* ¶ 174–175. There are no allegations that Saracino was acting in any capacity for the Church in picking up Ashley Ruiz from school and taking her to his residence. *See id.* ¶¶ 171–75. Similarly, Bernice Perez and Darleen Diaz allege that Saracino invited them to his home where he abused them in the home, in his swimming pool, or in his car. *Id.* ¶¶ 113, 116, 119. Again, there is no allegation that Saracino was acting in any capacity for the

Church in inviting them to his home or at the time of the abuse. *See id.* ¶¶ 110–134. Because Ashley Ruiz, Bernice Perez, and Darleen Diaz do not allege they were abused while Saracino was acting as a volunteer or in any other capacity for the Church, their claims fail.

### 2.    The Statute of Limitations Bars the Saracino Plaintiffs' Claim

In addition to failing to state a claim, the Saracino Plaintiffs' claims are barred by the statute of limitations. "California Code of Civil Procedure § 335.1's two-year statute of limitations applies to negligent hiring claims." *Lee*, 2021 WL 5990162, at \*9. A cause of action for negligence accrues at the time of the negligent act. *Aetna Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 264 P.2d 5, 6 (Cal. 1953). "[A]ny statute of limitations which applies to the claims of a minor is tolled until the minor reaches the age of 18." *W. Shield Investigations & Sec. Consultants v. Superior Ct.*, 82 Cal. App. 4th 935, 947 (Cal. App. 2000).

Here, the Saracino Plaintiffs' claim for negligent supervision, hiring, and retention accrued at the time they were allegedly abused and the limitations period began to run when they turned 18. Am. Compl. ¶ 120. Jane Roe 8 and Ashley Ruiz allege Saracino abused them in 1996, *id.* ¶¶ 152, 173; and Darleen Diaz and Bernice Perez allege Saracino abused them in 1998 and 1999, *id.* ¶¶ 113, 116. Jane Roe 8 turned 18 in 2011, *id.* ¶ 152; Ashley Ruiz turned 18 in 2009, *id.* ¶ 171; Bernice Perez turned 18 in 2009, *id.* ¶ 110; and Darleen Diaz turned 18 in 2007, *id.* ¶ 115. The Saracino Plaintiffs do not allege any facts establishing that they did not discover the abuse until after the limitations period expired. *See generally id.* Rather, the Saracino Plaintiffs all allege they knew and disclosed that they were abused by or before 2004. Am. Compl. ¶¶ 122, 127, 152-153. Thus, the Saracino Plaintiffs' negligent hiring, supervision, and retention claims all expired by or before 2013. Their claims are-time barred and should be dismissed with prejudice.

### G.    THE SARACINO PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT SUPERVISION OF A MINOR (CLAIM 9)

The Saracino Plaintiffs allege that the Ministers engaged in negligent supervision of minors by allowing Saracino to abuse them. Am. Compl. ¶¶ 258–265. But the tort of negligent supervision does not fit with the allegations in this case.

"The elements of a claim for negligent supervision of a minor are set forth in the standard form California jury instruction number CACI 410, and include, in summary 1) observation or awareness of habits or tendencies that pose an unreasonable risk of harm to others, 2) the opportunity and ability to control the minor's behavior, 3) failure to take reasonable precautions against the behavior, 4) harm to the plaintiff, and 5) the negligent supervision was a substantial factor in causing harm." *Travelers Com., Ins. Co. v. Nadjat-Haeim*, No. CV10-840 AHM (PJWX), 2011 WL 13213824, at *3 (C.D. Cal. June 16, 2011); *see also* Judicial Council Of California Civil Jury Instruction No. 428; Cal. Civ. Code § 1714.1. The purpose of a claim for negligent supervision of minor is "to protect and compensate injured innocent third persons by expanding the common law scope of parental liability for willful acts of misconduct by children." *Jamshid-Negad v. Kessler*, 15 Cal. App. 4th 1704, 1709 (1993) (citation and quotation marks omitted).

Here, there are no allegations that any minor committed any tort against any Plaintiff. *See generally* Am. Compl. Nor are there any allegations the Ministers had the opportunity or ability to control any minor's behavior, observed or were aware that any minor had habits or tendencies that posed an unreasonable risk of harm to others, or failed to take reasonable precautions to prevent the behavior. *See id.* The Saracino Plaintiffs' negligent supervision of a minor claim is meritless.

### H.    THE SARACINO PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM AND THE CLAIM IS TIME-BARRED (CLAIM 11)

The Saracino Plaintiffs allege that the Ministers negligently failed to report Saracino's alleged abuse and to warn the Saracino Plaintiffs and their parents of Saracino's sexually predatory behavior. *Id.* ¶¶ 279, 280. To establish a claim of negligence under

California law, the Saracino Plaintiffs must show that (1) the Ministers owed them a legal duty of care, (2) the Ministers breached that duty through a negligent act or omission, (3) the Saracino Plaintiffs' injuries were caused as a result of a breach of that duty, and (4) damages. *Wise v. Superior Court*, 222 Cal. App. 3d 1008, 1013 (1990). Here, the Amended Complaint fails to establish that (i) the Ministers had a duty to report the alleged abuse or that the failure to report caused their injuries or (ii) the Ministers had a duty to warn under the circumstances. The claims also are untimely.

### 1. The Saracino Plaintiffs Fail to Show Ministers Breached a Duty to Report

Under California law, CANRA provides the standard of care for reporting child abuse. *See Lyles v. City of Huntington Park*, No. CV 16-3223-GW (KSX), 2016 WL 7479365, at \*10 (C.D. Cal. July 7, 2016). But CANRA did not apply to clergy until January 1, 1997. *See supra* Section II. Thus, the Ministers did not have a mandatory duty under CANRA to report child abuse until that time. *See id.* Further, after January 1, 1997, the Ministers had a duty to report only where they had a "reasonable suspicion" of abuse, which is defined "as a circumstance where 'it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate on his or her training and experience, to suspect child abuse or neglect.'" *Lyles*, 2016 WL 7479365, at \*10 (quoting Cal. Pen. Code § 11166(a)(1)).

Here, the Ministers did not have a duty to report or they did not have reasonable suspicion of any of the alleged abuse. Jane Roe 8 alleges Saracino abused her in 1996 and that her mother informed the Moricis of the abuse at that time. Am. Compl. ¶¶ 152, 154. The Moricis allegedly sought advice from the Williams about the incident. *Id.* ¶ 154. The Ministers were not mandatory reporters under CANRA at that time and thus had no duty to report the abuse. Thus, they cannot be liable for a negligent failure to report. In any case,

any failure to report did not proximately cause Jane Roe 8's injuries because Jane Roe 8 does not allege that she was abused again after her mother told the Ministers of the abuse.[3]

Ashley Ruiz also alleges Saracino abused her in approximately 1996 at his home on several occasions after he picked her up from school. *Id.* ¶¶ 171–175. Again, the Ministers were not mandatory reporters in 1996 and thus cannot be liable for a negligent failure to report on that basis. More importantly, the Saracino Plaintiffs do not allege that anyone told the Ministers of the abuse, or that they knew or had any reason to suspect that Saracino abused Ashley Ruiz. *See id.* ¶¶ 171–75. Ashley Ruiz alleges that she repressed her memory of the abuse for approximately 8 years and then disclosed it to her mother in 2004, and her mother then notified the police. *Id.* ¶ 173. Further, Ashley Ruiz was not abused during a Church function or by Saracino while he was acting in any Church capacity. *See id.* ¶¶ 171–175. Instead, Saracino abused Ashley Ruiz at his home and pool. *Id.* ¶ 175. Thus, there could be no duty to report Ashley Ruiz's alleged abuse.

Similarly, Bernice Perez and Darleen Diaz allege Saracino abused them in 1998 and 1999 at his home, in his pool, and in his car. *Id.* ¶¶ 113, 116, 119. They do not allege that anyone told the Ministers of the abuse, or that the Ministers knew or had any reason to suspect that Saracino abused Bernice Perez and Darleen Diaz. *See id.* ¶¶ 115–151. In fact, the Saracino Plaintiffs allege that the Ministers only had knowledge of Jane Roe 8's alleged abuse. *See id.* ¶¶ 19, 20, 23, 24. Further, neither Bernice Perez nor Darleen Diaz were abused during a Church function or by Saracino while he was acting in any Church capacity. *Id.* ¶¶ 113, 116, 119. In short, the Ministers never negligently failed to report any abuse.

### 2.     The Saracino Plaintiffs Fail to State a Failure to Warn Claim

"'[A]s a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.'" *Conti v. Watchtower Bible & Tract Soc'y of New*

---

[3] Further, there is a question about whether the Ministers had reasonable suspicion that Jane Roe 8 was abused. Plaintiffs allege that the matter was handled and investigated by John Bringardner and Raul Dunn, who concluded that Jane Roe 8 had not been abused. *Id.* ¶¶ 156–59.

*York, Inc.*, 235 Cal. App. 4th 1214, 1226 (2015) (quoting *Zelig v. County of Los Angeles*, 27 Cal. 4th 1171, 1182 (2002)). "'This rule derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter.'" *Id.* (quoting *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976)). There is only a duty where the defendant "'stands in some *special relationship* either to the person whose conduct needs to be controlled, or to the foreseeable victim of such conduct.'" *Id.* (quoting *Roman Catholic Bishop of San Diego v. Superior Court*, 42 Cal. App. 4th 1556, 1564 (Cal App. 1996)). The California Court of Appeals has held that neither a church nor its leaders have a special relationship with the church's congregation. *Id.* at 1227–1231. As such, neither a church nor its leaders have a duty to warn the congregation, or church members who have children, that one of its members sexually abused a child or is alleged to have sexually abused a child. *Id.* at 1226–1231.

In *Conti*, the church and its elders learned that one of its adult church members had previously molested a child. *Id.* at 1217. Afterward, the church member molested the plaintiff, also a church member, when she was nine years old and continued to molest her until she was 10 or 11. *Id.* at 1218. With one exception, the church member molested the plaintiff at the church member's home while the plaintiff and church member were supposed to be performing field service for the church. *Id.* at 1222. The plaintiff sued the church for negligently failing to warn the church congregation that the adult church member was a child molester and failing to restrict his participation in church activities. *Id.* at 1224-1225. After an unfavorable jury verdict, the church appealed. *Id.* The California Court of Appeals considered de novo whether the church elders had a legal duty to warn the congregation or the plaintiff's parents that the adult church member had molested a child. *Id.* at 1226. The court recognized that,

> [w]hile it is readily foreseeable that someone who had molested a child may do so again, the burden the duty to warn would create and the adverse social consequences that duty would produce outweigh its imposition. The burden would be considerable because precedent could require a church to intervene whenever it has reason to believe that a congregation member is capable of doing harm, and the scope of that duty could not be limited with any precision . . . Imposition of a duty to warn would also have detrimental social consequences. It would discourage wrongdoers from seeking potentially

beneficial intervention, and contravene the public policy against disclosure of penitential communications.

*Id.* at 1228-1229. Ultimately, the court held that the church elders had no duty to warn the congregation or the plaintiff's parents that the adult member had previously molested a child. *Id.* at 1230-1231.

Like in *Conti*, Bernice Perez, Darleen Diaz, and Ashley Ruiz assert that the Ministers had a legal duty to warn their parents that Saracino had allegedly sexually abused Jane Roe 8.[4] Am. Compl. ¶ 280. Under *Conti*, however, the Ministers had no legal duty to warn the Church congregation, or any adult parents, of Saracino's prior alleged abuse. Considering the court found no legal duty under the facts in *Conti*, there certainly could be no duty in this case as to Bernice Perez, Darleen Diaz, or Ashley Ruiz. The Church's investigation concluded that Jane Roe 8 was not abused, and thus the Ministers could not say with certainty that Saracino was a child abuser. *Id.* ¶ 157–69. Further, the Moricis were not the leaders of the East Region Church at the time Bernice Perez and Darleen Diaz were allegedly abused. *Id.* ¶ 130. Moreover, Bernice Perez, Darleen Diaz, and Ashley Ruiz do not allege they were abused at a Church function or while Saracino was acting in any Church capacity. *See id.* ¶¶ 110–24, 171–75. Thus, no special relationship exists requiring the Ministers to warn Church members, the Saracino Plaintiffs, or their parents that Saracino had a propensity to sexually abuse children.

As for Jane Roe 8, her claim fails because not a single allegation exists that the Ministers knew, or had reason to know, that Saracino posed a danger to Jane Roe 8. *See generally* Am. Compl. Thus, she has failed to allege facts giving rise to a duty to warn.

### 3.    The Two-Year Statute of Limitations Bars the Saracino Plaintiffs' Claims

Under California law, a two-year statute of limitations exists for negligence claims. *See* Code Civ. P. 335.1. As with their other claims, the Saracino Plaintiffs fail to allege a

---

[4] The Amended Complaint is not clear whether Ashley Ruiz was abused before or after Jane Roe 8's mother told the Ministers that Saracino abused Jane Roe 8.

basis for tolling their claims. *See supra* Section IV. Thus, their negligence claims are barred by the statute of limitations.

## V.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Ministers respectfully request that the Court dismiss the Saracino Plaintiffs' Amended Complaint with prejudice and without leave to amend.

DATED: June 30, 2023

**FOLEY & LARDNER LLP**
Byron J. McLain
David J. Jordan
Jordan C. Bledsoe
Savannah L. Levin


*/s/ Byron J. McLain*
Byron J. McLain
Attorneys for Defendants Bruce Williams,
Robin Williams, Steve Morici, and
Jacqueline Brown-Morici

## CERTIFICATE OF COMPLIANCE

On June 30, 2023, the Court granted Bruce Williams, Robin Williams, Steve Morici, and Jacqueline Brown-Morici's Application to File an Overlength Memorandum of Points and Authorities in Support of Their Motion to Dismiss. Dkt. No. 76 at 2. The Court ordered that the Overlength Memorandum of Points and Authorities in Support of the Motion to Dismiss shall be no more than 8,800 words. *Id.* The undersigned, counsel of record for Defendants Bruce Williams, Robin Williams, Steve Morici, and Jacqueline Brown-Morici, certify that their Memorandum of Points and Authorities in Support of the Motion to Dismiss contains 8,782 words, which complies with the word limit of L.R. 11-6.1. If the Court does not count the words that pertain to the RICO argument, [5] this Memorandum of Points and Authorities contains fewer than the 7,000 words permitted under L.R. 11-6.1.

DATED: June 30, 2023

**FOLEY & LARDNER LLP**
Byron J. McLain
David J. Jordan
Jordan C. Bledsoe
Savannah L. Levin


*/s/ Byron J. McLain*
Byron J. McLain
Attorneys for Defendants Bruce Williams,
Robin Williams, Steve Morici, and
Jacqueline Brown-Morici

---

[5] On Tuesday, June 27, 2023, during a joint conversation with co-defense counsel in the related cases before this Court – 22-cv-09467, 22-cv-09472, 23-cv-00664, 23-cv-00765, 23-cv-00999, and 23-cv-01192, Plaintiffs' counsel represented that they would dismiss the Racketeer Influenced and Corrupt Organizations Act ("RICO") claim in all the cases by the following morning on Wednesday, June 28, 2023. To date, Plaintiffs have not dismissed the RICO claims, and the Ministers' Memorandum of Points and Authorities goes beyond the 7,000-word limitation because of the need to address the RICO claim.